## QUINN et al. v. NATIONAL MORTGAGE & INVESTMENT CO. et al.

### No. 5263.

Court of Appeals of the District of Columbia.

Argued Dec. 11, 1931.

Decided Feb. 8, 1932.

On Rehearing April 4, 1932.

W. Gwynn Gardiner, of Washington, D. C., for appellants.

Godfrey L. Munter, Benjamin S. Minor, H. Prescott Gatley, and Arthur P. Drury, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

## MARTIN, Chief Justice.

This suit was brought by appellants as receivers of the Provident Relief Association, a corporation, praying for the cancellation of a certain promissory note in the sum of $10,000, together with the deed of trust securing the same, purporting to be an obligation of the association in favor of the National Mortgage & Investment Company, but which appellants claim to be illegal and void.

The lower court heard the case upon evidence, and dismissed the bill of complaint, whereupon this appeal was taken.

It appears that on February 27, 1893, the Provident Relief Association was incorporated under the laws of the District of Columbia, for the purpose of doing a sick, accident, and death benefit insurance business. The capital stock of the association consisted of 1,000 shares. In March, 1919, these shares were held as follows, to wit: John Brosnan, Jr., 497 shares; John Brosnan, Jr., as administrator of the estate of John Brosnan, Sr., deceased, 498 shares; Thomas W. Bramhall, 4 shares; and Eunice V. Avery, 1 share. During all of the time now in question Brosnan, Bramhall, and Avery constituted the board of directors of the association, Brosnan being president and treasurer, Bramhall secretary, and Avery vice president and assistant treasurer. In the year 1918 Bramhall entered the Army; after leaving the service he made his home in Chicago, and took no part whatever in the affairs of the association. In his absence Avery acted as assistant secretary by authority of the board of directors.

On March 14, 1919, Brosnan purchased for the association certain real estate situate in the District of Columbia. He took the legal title to the property in his own name, and immediately placed a mortgage for $20,000 upon it in favor of the Equitable Building Association, the proceeds of which he paid upon the purchase price. The remainder of the price was paid from resources of the association.

The property was then conveyed by Brosnan, subject to the mortgage, to George A. Rock and Richard M. Parker, as trustees for the association upon the following trust, to wit: "In trust for the sole use and benefit of the Provident Relief Association of Washington, D. C., a corporation in said District, its successors and assigns, and with full power and authority in said trustees or in the survivor of them to sell and convey in fee simple or by way of trust or mortgage or to lease or to otherwise dispose of said land or any part thereof from time to time when and as they or the survivor of them shall be directed so to do in writing by the said Provident Relief Association, its successors or assigns, such direction to be evidenced and sufficiently attested by the signatures of either the president or vice president and secretary for the time being of said association, and the corporate seal being affixed to any such deed, mortgage, lease, or other conveyance, and without any liability on the part of the purchaser to see to the application of the purchase money coming into the hands of the said trustees or the survivor of them."

On March 10, 1924, Parker, as sole surviving trustee, conveyed the property to Sidney Thompson as trustee for the association, under the same terms and conditions as those contained in the prior conveyance to Rock and Parker. This conveyance was made under the direction of the directors of the association, and was evidenced by the signature of the president and assistant secretary and the affixing of the corporate seal thereto. It served to substitute Thompson as trustee in place of Rock and Parker, and was duly entered for record on the day of its execution.

On March 19, 1924, Thompson, as trustee for the association, issued a promissory note in the sum of $20,000, payable in one year to George D. Miller, and executed a deed of trust upon the property to secure payment of the same. This was done by the direction of the association acting by its directors, as is evidenced by the signature to the trust deed of Brosnan as president, and Avery as assistant and acting secretary of the association, and the affixing of its corporate seal thereto.

The note to Miller fell due on March 19, 1925, at which time the incumbrances upon the property amounted to about $32,000, being the purchase-money mortgage of $20,000

now reduced to about $12,000, and the mortgage to Miller for $20,000.

In order to pay these, the trustee, Thompson, acting under the directions and authority of the directors, issued two deeds of trust upon the property in behalf of the association, both of which were attested by the signature of Brosnan as president and Avery as assistant secretary, together with the corporate seal of the association, the first of the two trusts being for $25,000 to the National Saving & Trust Company, the second being for $10,000 to Charles M. Marks, and by him indorsed to the defendant, National Mortgage & Investment Company. Both of these trust deeds were duly entered of record.

The entire sum realized by the trustee for the association from these two trusts was paid in satisfaction of the aforesaid prior liens, to wit, the balance owing to the Equitable Building Association upon the purchase money lien and the sum owing to Miller upon the $20,000 trust issued to him, together with certain interest and expenses. Accordingly, the trusts securing the purchase-money loan and that issued to Miller were canceled of record, leaving the property subject only to the trusts for $25,000 and $10,000, as last set out.

In this case the appellants do not attack the $25,000 trust; they contend, however, that the $10,000 trust is illegal and void, and pray for a decree canceling it.

The lower court denied the prayer for cancellation, and we agree with its decision to that effect.

█ The proceeds of the $10,000 trust, intermingled with those of the $25,000 trust, were paid in satisfaction of the two prior trust liens upon the property of the association, and it would plainly be inequitable to permit the association to retain the benefits of the trust and at the same time escape its obligations. 4 R. C. L. p. 512.

In answer to this proposition, the appellants claim that the association "received no benefit" from the proceeds of the $20,000 trust theretofore issued to Miller, and consequently that the payment of that trust from the proceeds of the $10,000 trust should not estop the receivers from defending against the latter. This claim, however, is not sustained by the facts. It appears beyond question that the lender of the money in the Miller transaction acted in good faith, and gave a check for the amount of the loan secured by the trust to Thompson, trustee; the check was made payable to Thompson as trustee for the association, and was indorsed by him "payable to the order of the Provident Relief Association"; it was delivered to Brosnan, who at the time was the president and treasurer of the association; it was duly indorsed and was paid by the bank upon which it was drawn. If Brosnan as treasurer afterwards failed to account to the association for the money thus received by him, his default would not impair the validity of the note and trust deed upon which the creditor had in good faith advanced his money. Accordingly the trust deed for $20,000 constituted a valid lien upon the property of the association, and its payment from the proceeds of the present trust effectually defeats the prayer of appellants for a cancellation of the latter.

The appellants raise various other questions in the case. They deny the right or authority of Avery to act as assistant secretary of the association, the legality of actions taken by the board of directors at meetings held without formal notice, the validity of the deed of Parker as surviving trustee to Thompson, as trustee. They also cite a number of cases brought in the District Courts concerning disputes arising between Brosnan and his sisters, wherein certain injunctions were issued against Brosnan. We do not regard these points as well taken, at least in relation to the conclusions above stated.

█ We find it proper, however, to modify the decree of the lower court in so far as it overrules the charge of usury made by appellants against the trust. In our opinion, the transaction out of which the trust arose was virtually a bargain between the lending company and the borrowing association, whereby the former agreed to loan to the latter the sum of $9,300, for which the latter was to execute and deliver its promissory note in the sum of $10,000 with interest from date. For the purpose of avoiding the usury statutes, an intermediary was employed, and the trust in the sum of $10,000 was made payable to him, whereupon, in pursuance of the predetermined plan, he professed to sell the same to the actual lender for the sum of $9,300, and this sum was paid as the real amount of the loan to the actual borrower. Such a transaction is fictitious, and is not sustained by the courts. See Ruling Case Law, vol. 27, p. 211, par. 12; Brown v. Slocum, 30 App. D. C. 576; Nichols v. Fearson, 7 Pet. 103, 8 L. Ed. 623. Accordingly the loan secured by the trust in this case is to be considered as a loan of $9,300.

The decree of the lower court as thus modified is affirmed, with costs.

## On Motion for Rehearing.

The court has been requested by both parties to define its views as to the amount of interest, if any, recoverable by the National Mortgage & Investment Company from the Provident Relief Association, a corporation, and from appellants as receivers thereof, upon the certain trust for $10,000 executed by Thompson, trustee, to Marks, and by the latter indorsed to the appellee company, which trust is found by the court to contain usury in the sum of $700, and to be of a valid principal of only $9,300.

It is the opinion of the court that under section 1180, D. C. Code (D. C. Code 1929, T. 17, § 3), the whole of the interest contracted to be paid by the terms of the trust is forfeited, and that the obligation thereof may be fully discharged by the payment of $9,300, without interest.