Everett A. R. SEARL, Pearl A. Searl,
Appellants,

v.

Donald M. EARLL, Appellee.

No. 12029.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 26, 1954.

Decided Nov. 24, 1954.

Mr. Arthur J. Hilland, Washington,. D. C., with whom Mr. Vincent C. Burke,. Jr., Washington, D. C., was on the brief,. for appellants.

Mr. H. Max Ammerman, Washington,. D. C., for appellee.

Before BAZELON, FAHY and DANA-HER, Circuit Judges.

DANAHER, Circuit Judge.

Earll sued to recover the unpaid balance of $1,564.58 and interest on an unsecured promissory note of $2,000 signed by the Searls on August 14, 1943. The Searls pleaded usury as a defense and counterclaimed for $3,000, alleging breach of faith by Earll while he acted as agent for the Searls. We allowed this.

appeal from the judgment of the Municipal Court of Appeals which had reversed a judgment in favor of Mr. and Mrs. Searl on their counterclaim. Earll v. Searl, 101 A.2d 248, 251. The Municipal Court of Appeals treated the counterclaim as seeking recovery for "usury and not secret profits" and held (a) that the claim was barred by the one year limitation set forth in the statute,[1] and (b) that this defense was available to and had not been waived by Earll even though not pleaded.

The principal points urged upon us may be stated thus: that Earll waived the benefit of the statute by his failure to plead the limitation; that the one year limitation was stayed or extended because of Earll's fraud in concealing the facts as to usury and as to his dual capacity as agent; and that Earll acted as the agent for his wife as lender and for the Searls as borrowers without disclosure of his dual capacity, and thus is liable on the counterclaim.

In the first trial, Earll was awarded judgment on his complaint as well as on the counterclaim. The Municipal Court of Appeals reversed, holding that the note was part of a usurious transaction, recovery on which would not be enforced, and ordering a new trial on the defendant's counterclaim "for the purpose of determining what amount, if any, is recoverable by Mr. and Mrs. Searl." Searl v. Earll, 62 A.2d 374, 379. We denied Earll's petition for the allowance of an appeal in that case.

Although in the course of the first trial, the Searls learned for the first time that Mrs. Earll, plaintiff's wife—and not a third party—had been the purported lender of the money involved, no additional evidence was offered at the second trial, and by stipulation the parties agreed that the court might proceed on the transcript of evidence and the exhibits of the original trial. Earll thereupon orally moved to amend his reply by setting up the statute of limitations. The motion was denied on the ground that the statute of limitations as an affirmative defense should have been pleaded, and his failure earlier to have pleaded the statute constituted a waiver of the defense. In the light of the opinion of the Municipal Court of Appeals, 62 A.2d 374, and on the record made in the first trial, judgment was thereupon entered for the Searls on their counterclaim to recover $3,000 (the maximum within the jurisdictional limit of the Municipal Court) plus interest from January 2, 1946 and costs.

Since the facts are fully set forth in the respective opinions of the Municipal Court of Appeals above referred to,[2] we make only such brief factual references as are deemed necessary to an understanding of the points to be considered.

The Searls and Earll, a real estate broker, had engaged in various transactions over a period of years prior to December 17, 1941, when the Searls executed a note for $8,750. The sum actually loaned by Mrs. Earll was only $7,875, the difference, or $875, being "commission" received by Earll. Nonetheless, Mrs. Earll received interest at 6 per cent on the full amount of $8,750. With this usurious transaction outstanding, on July 22, 1943, Mr. and Mrs. Searl signed a letter authorizing Mr. Earll to obtain an $18,000 loan at 6 per cent interest, in consideration for which, they agreed to pay Earll a commission of $2,000. The $18,000 loan, when arranged, incorporated and paid off the earlier $8,750 loan. The $18,000 note was drawn to the order of Earll's secretary who endorsed it in blank without recourse and gave it to Earll. This note was subsequently extinguished by payments of principal and interest made to Earll. The $2,000 note here in suit, representing Earll's commission, was made payable to Earll who placed it for collection with the bank used by himself and his wife. She received

---

1. D.C.Code § 28-2704 (1951), which permits recovery of interest paid on a usurious transaction "provided said suit be begun within one year from the date of such payment."

2. Earll v. Searl, D.C.Mun.App., 101 A.2d 248; Searl v. Earll, 62 A.2d 374.

seven of the nine $50 payments made on the $2,000 note while it was in the bank. Earll's reply to the Searl's counterclaim admitted that the Searls had employed him "as their agent to obtain for them a loan of money from a third party."

■ (1) That the series of transactions culminated in usury cannot be doubted, and the Municipal Court of Appeals was entirely correct in so holding. That Mrs. Earll had knowledge of and participated in the transactions seems equally clear. Had the Searls instituted timely action to recover the unlawful interest they surely would have been permitted to do so. That the usury constituted a defense to Earll's suit on the note is made certain not only by the statute, D.C.Code § 28–2703 (1951), but by our application of it in Hill v. Hawes, 1944, 79 U.S.App.D.C. 168, 170, 144 F.2d 511, 513, where we said: "However, no statute puts any limitations on the claim of usury *used as a defense* in a suit based on the usurious obligation. A usurer cannot by delaying suit on a note acquire the right to collect the usurious payments forfeited by the statute." (Italics supplied.)[3] The counterclaim here and in the particular we are considering, is in the same status as though the Searls had failed to institute timely action under the statute. The Municipal Court of Appeals correctly decided, 101 A.2d 248, that where the statute gave a right, and at the same time imposed a limitation upon its exercise, the limitation need not have been pleaded and the defense was not waived by Earll's failure to plead it. Although the trial judge erred in denying Earll's motion to be allowed to plead the limitation of the statute, the error becomes immaterial in the light of various aspects hereinafter to be discussed.

■ (2) Granting the non-waiver by Earll, we pass to the problem of the effect to be accorded to the delay by the Searls in the exercise of their statutory right when, as in this instance, its timely assertion has been postponed as a result of the fraud of the party against whom liability might otherwise have been urged. Extensive consideration of this question has engaged many courts,[4] notably the Court of Appeals in the Fourth Circuit in Scarborough v. Atlantic Coast Line R. Co., 1949, 178 F.2d 253, 15 A.L.R. 2d 491, certiorari denied, 1950, 339 U.S. 919, 70 S.Ct. 621, 94 L.Ed. 1343; and see Annotation 15 A.L.R.2d 500. In the Scarborough case, Judge Dobie wrote, 178 F.2d at page 259:

"It has often been said that a primary purpose of statutes of limitations in general has been the prevention of fraud. It is freely conceded by appellee here that fraud will toll the running of the so-called remedial statute of limitations. We cannot see a distinction and a difference, so clear and so real, between the two classes of statutes of limitations—the remedial and the substantive—as to justify the courts in fully giving effect to fraud in tolling the statute in one type (remedial) and then flatly denying that effect to fraud in the other type (substantive). The ancient maxim that no one should profit by his own

---

3. Treating this as an action for a declaratory judgment that the borrower in a usurious transaction had a complete defense to alleged liability on the note, we not only pointed out that there are no limitations on the claim of usury urged as a defense, but also, giving effect to the statute, after finding that the obligation had been discharged in full, we limited recovery of excess payments to those made within one year of the filing of the suit.

4. In Talbot v. Sioux National Bank, 1902, 185 U.S. 182, at page 188, 22 S.Ct. 621, at page 623, 46 L.Ed. 862, Mr. Justice McKenna said: "But it is contended that the bank fraudulently concealed from the plaintiff that it had charged him with usurious interest, and that, therefore, the period of limitation of the statute did not begin 'until the discovery of the wrong.' A disputable proposition. Besides, it is not available to the plaintiff. The petition does not disclose when the wrong was discovered. On the face of the petition the action was barred, and against its allegations and the circumstances detailed in it we cannot indulge the supposition that plaintiff's consciousness of the wrong was not aroused until some time within two years before the commencement of this action."

conscious wrong is too deeply imbedded in the framework of our law to be set aside by a legalistic distinction between the closely related types of statutes of limitations."

The Municipal Court of Appeals, 101 A.2d 248, 250, declined to apply the principle deducible from the Scarborough decision because it felt "convinced that there was no evidence of fraud by Earll which prevented the Searls from ascertaining the facts or which induced them to refrain from filing suit." We do not share this conclusion. The record abundantly demonstrated that Earll concealed from the Searls the fact that the lender was his wife—if not himself, as alleged in the counterclaim, which also pleaded that "Earll by and through his agency for defendants, as aforesaid, made secret profits for himself at their expense."[5]

■ (3) It is the law in this circuit, as generally throughout the country, that an agent may not secretly accept a dual employment involving duties to parties with adverse interests, thus putting himself in a position where his own interests might be antagonistic to the interests of one or both of his principals. In 1940 this court commented that "It is elementary that a broker may not act for both parties in a transaction; and that if he

5. Having recited certain facts earlier herein set forth, the trial judge upon the second trial in this case found the following facts: "Although the money actually loaned to Mr. and Mrs. Searl came from the funds on deposit in the name of Mrs. Earll, her husband, defendant to the counterclaim, had been acting with full authority as her agent in numerous similar transactions over a period of 25 years, including other loans to Mr. and Mrs. Searl. Mrs. Earll knew that her husband was being paid a commission by Mr. and Mrs. Searl for securing the present loan of $18,000.00. There is no evidence that she paid him a fee for his services as her agent. However, prior to this particular loan, Mr. and Mrs. Earll had maintained joint bank accounts which fact would raise some question as to the sole ownership of the loan funds and forms a not unreasonable basis for an inference that Mr. Earll may have had a personal interest in the money loaned to Mr. and Mrs. Searl. Mr. Earll was unable to either admit or deny that he had a power of attorney at times on her bank account. In any event, in view of the husband-wife relationship, where the wife was not engaged in the loan business and her husband handled the entire transaction, it could be reasonably inferred that as a member of the household he indirectly shared in the benefits of the interest paid by the Searls on the $18,000.00 loan. The question of usury has already been settled by the appellate court based upon the principle of law that the collection of a commission by the lender's agent with the knowledge and consent of the lender plus 6% interest on the principal loan exceeded the legal rate of interest in this jurisdiction and made it usurious. Both Mr. and Mrs. Earll were participating parties in the usurious transaction and equally responsible therefor. The evidence is clear that Mr. Earll at no time prior to the loan of $18,000.00 and the agreement with respect to his commission disclosed to Mr. and Mrs. Searl that he was acting as an agent for his wife and that it was her money which was being advanced for the loan. The relationship between Mr. Earll and the person who advanced the loan was not revealed until the first trial of this case. The Court concludes that Mr. Earll was the principal procurer and an equal participant in the usurious transaction with Mr. and Mrs. Searl, arising out of the loan of $18,000.00. He handled all matters relating to the loan including the collection of 6% interest and the commission of $2,000.00. He was a beneficiary of the payments of both the commission and the interest which were personally paid to and collected by him. The Court is of the opinion that he is responsible for the usury, benefited thereby and is liable to Mr. and Mrs. Searl for damages arising out of the usurious transaction. It is no defense for Mr. Earll to claim that the interest payments were passed on to his wife and that she alone is liable for their return to Mr. and Mrs. Searl. There is testimony by Mr. Earll that he sold the commission note to his wife and then after she had received seven out of the nine monthly payments he 're-purchased' it from her. The note given for the $18,000.00 loan was made payable to Mr. Earll's secretary, endorsed by her in blank and delivered to him. The note was never subsequently endorsed or paid to Mrs. Earll but was kept in a safe deposit box held jointly by Mr. and Mrs. Earll. The whole picture presented by the evidence is that of a very close relationship in which the husband handled all the business of the loans and the wife merely was the stakeholder of the funds used for the benefit of the two."

does so act, he may be required to return any commissions which he has received for his services. Here Earll was acting both for himself and for plaintiff, and he must therefore restore the commission with interest." Earll v. Picken, 1940, 72 U.S.App.D.C. 91, 102, 113 F.2d 150, 161.[6] The court then continued " * * * we recognize that the defendant [Earll] may have been free, subjectively, from deliberate intention to perpetrate a fraud * * *. That he may have intended no fraud does not overcome the fact that one has been committed. He intended to do and did what the law does not permit to be done, and that is sufficient to sustain the reparation which it has been necessary to require him to make." In Harten v. Loffler, 1908, 31 App.D.C. 362, 368–369, this court said: "The duty of an agent for the vendor is to obtain the highest possible price for his property; of the agent for the purchaser to buy it for the lowest price. These duties are so irreconcilable and conflicting that they cannot be performed by the same agent without danger that he will sacrifice the interests of one to the other, or both to his own when his commission is dependent upon the consummation of the sale. *If he so acts as the agent of each without the knowledge of both, he is clearly guilty of a breach of his contract, and commits a fraud by his concealment*. A contract under such conditions is *contra bonos mores*, and the law, acting in harmony with morals, will refuse to enforce it. [Citing cases]." (Emphasis supplied.)

Again, in National Savings & Trust Co. v. Sands, 1915, 44 App.D.C. 20, 32–33, this court made it clear that the courts will not tolerate the surreptitious taking of double commissions or the trading of a principal's property for property in which the agent is secretly interested or where the real facts relating to the transaction are concealed. The principle has elsewhere been noted many times as in Winget v. Rockwood, 8 Cir., 1934, 69 F.2d 326, 330, where the

court said: "To be secretly acting for the benefit of an adverse party, while ostensibly acting for one of the parties, is a fraud upon the latter, and a breach of public morals which is not permitted. [Citing cases]." And see Singer v. A. Hollander & Son, 3 Cir., 1953, 202 F.2d 55, 59, and Keith v. Berry, D.C.Mun. App., 1949, 64 A.2d 300, 302.

In view of Earll's failure to disclose the dual capacity in which he was acting when he was under a duty to speak, was the counterclaim sufficient to permit the vindication of the Searl's "legal right or the remedying of a legal wrong"? Gold Seal Co. v. Weeks, 1954, 93 U.S.App.D.C. 249, 209 F.2d 802. We hold that it was so sufficient. See Wiren v. Paramount Pictures, Inc., 1953, 92 U. S.App.D.C. 347, 206 F.2d 465, certiorari denied, 1954, 346 U.S. 938, 74 S.Ct. 378.

In sum, Earll was clearly under a duty to speak, his concealment of the facts constituted fraud, the bar of the statute did not begin to run against the Searls until the fraud had been discovered, the counterclaim sufficiently pleaded the right of the Searls to a remedy, and the pleading was timely. That Earll as agent was personally liable for the unlawful interest which he turned over to his principal with knowledge that the principal was not entitled thereto is clear. Penhallow v. Doane, 1795, 3 Dall. 54, 87, 1 L.Ed. 507; Elliott v. Swartwout, 1836, 10 Pet. 137, 158, 9 L.Ed. 373; Hirning v. Federal Reserve Bank, 8 Cir., 1931, 52 F.2d 382, 387, 82 A.L.R. 297. Likewise, he may properly be held as principal since his wife was an undisclosed or partially disclosed principal. Oppenheimer v. Harriman Bank, 1937, 301 U.S. 206, 212, 57 S.Ct. 719, 81 L.Ed. 1042; Cleary Brothers v. Christie Scow Corp., 2 Cir., 1954, 215 F.2d 740; Du Pont v. U. S., 2 Cir., 1936, 83 F.2d 951, affirmed, 1937, 300 U.S. 150, 57 S.Ct. 391, 81 L.Ed. 570; Mayer v. Buchanan, D.C.Mun.App., 1946, 50 A.2d 595, 597; Restatement, Agency §§ 4(2), 321, 322. Earll was subject to

---

6. We are not advised that the Donald M. and Louise C. Earll, husband and wife in the instant case, are also the Donald M. Earll and Louise C. Earll named in the case cited.

separate liability and to suit individually, without the joinder of his wife as principal. Restatement, Agency § 321, comment b.

As to damages, D.C.Code § 28–2703 (1951) provides as to a usurious contract, that "the creditor shall forfeit the whole of the interest so contracted to be received". We have held this to mean that "the forfeiture applies not only to the usurious excess but also to the lawful interest included in the contract rate \* \* \* forfeiting all of the interest contracted for, if unpaid, or \* \* \* permitting its recovery, if paid, by action begun within one year after payment." Richards v. Bippus, 1901, 18 App.D.C. 293, 304. See also Quinn v. National Mortgage & Investment Co., 1932, 61 App.D.C. 44, 47, 57 F.2d 410, certiorari denied, 1932, 287 U.S. 610, 53 S.Ct. 13, 77 L.Ed. 530; and Cockrell v. First Federal Savings & Loan Ass'n, D.C.Mun.App., 1943, 33 A.2d 621, 623.

Thus, applying these principles to the facts as found by the Municipal Court, note 5, supra, and more fully recited in its opinion of July 20, 1953, a correct result was reached by that court. The judgment of the Municipal Court of Appeals will be reversed and the case remanded to that court with instructions to affirm the judgment of the trial court.

It is so ordered.