Thomas J. DOOLIN et al., Appellants,

v.

ENVIRONMENTAL POWER LTD. et al., Appellees.

No. 9914.

District of Columbia Court of Appeals.

Argued March 16, 1976.

Decided July 6, 1976.

George S. Leonard, Washington, D. C., for appellants.

Clyde W. Armstrong, Pittsburgh, Pa., of the bar of the State of Pennsylvania, pro hac vice, by special leave of court, with whom Max N. Edwards and Richard E. Schwartz, Washington, D. C., were on the brief, for appellees.

Before REILLY, Chief Judge, and KERN and YEAGLEY, Associate Judges.

KERN, Associate Judge:

On October 30, 1970, appellants entered into an agreement with appellees by which appellants contracted to sell an option war-

ranted to include strip mining rights as well as mineral rights to certain coal land in Pennsylvania. In return, appellee Environmental Power Ltd. [EPL] agreed to pay appellants $1,100,000 plus royalties of three percent of the sales price of all coal mined from the land for 15 years. Payment of the $1,100,000 was due May 14, 1971, but appellee EPL failed to pay at that time. Appellants then instituted in the federal district court here suit for breach of contract against EPL on June 11, 1971.

Appellants agreed on June 15, 1971, to dismiss this suit and settle their claim against EPL, having been informed by appellees that the coal option purchased by appellees was inadequate in that it did *not* include strip mining rights to the property so as to allow the coal to be mined, as had been warranted.[1] Appellants released appellees from the prior contract and appellees in return paid appellants $400,000 and agreed to pay appellants three percent of the sales price of all coal mined from the

land for 15 years, commencing on the first of several alternative dates.[2]

On March 19, 1975, appellants filed a complaint in the Superior Court against appellees requesting in the alternative (1) rescission of the settlement agreement and release entered into in June 1971, enforcement of the underlying contract of October 1970, and a money judgment for $700,000 and four percent of the sales price of all coal mined by appellees, or (2) enforcement of the 1971 settlement agreement and a money judgment in the amount of three percent of the sales price of all coal mined by appellees. Both appellees moved to dismiss the complaint pursuant to Super.Ct. Civ.R. 12(b), asserting various grounds.[3] Treating these pleadings as motions for summary judgment under Super.Ct.Civ.R. 56, *see* Rule 12(b), the trial court dismissed the first count as barred by the three-year statute of limitations for simple contracts, D.C.Code 1973, § 12–301(7), or in the alternative by the equitable doctrine of laches.[4] The court also ruled that the

1. Appellants had purchased the option assigned to EPL from the Merrills, who held title to the property. The contract between appellants and the Merrills allowed appellants to obtain "good and marketable title to coal (together with such rights, easements, licenses and privileges which in Somerset County, Pennsylvania, are customarily granted or reserved to the fee owner of coal underlying surface property, except the right to remove coal by strip mining methods) . . . ." The agreement also provided that the Merrills would transfer to appellants all their "right, title and interest in and to the Option Property," including "the covenants and warranties of title which were received from prior owners by Merrill . . . ." However, the "Option Property" evidently excluded strip mining rights. It was this interest in the Option Property that was assigned by appellants to EPL in their 1970 agreement.

2. This written contract was not under seal, and thus is governed by a three-year statute of limitations. D.C.Code 1973, § 12–301(7). The original contract in 1970 was presumed by the trial court to be under seal and thus subject to a 12-year statute of limitations. D.C.Code 1973, § 12–301(6).

3. Appellee EPL moved to dismiss for lack of jurisdiction over EPL, for failure to join indispensable parties under Super.Ct.Civ.R. 19 who were not subject to service of process in the District of Columbia, and as to the first count only, for failure to state a claim upon which relief could be granted due to the applicable three-year statute of limitations or laches. Appellee Donald W. Madole moved to dismiss on the grounds that he was not personally liable to appellants under either contract, that indispensable parties were not joined, and that the first count was barred by the statute of limitations or laches.

4. Appellants assert in their brief that the only issue on appeal is the lower court's application of the three-year statute of limitations to the 1971 contract in the second count, since this ruling led to dismissal of the first count, but that appellees never raised the statute of limitations as a bar to the second count. As we read the trial court's ruling, both of appellants' counts relied on the 1971 contract and thus both were dismissed as barred by the three-year statute of limitations. Also, both appellees clearly raised the defense of limitations or laches with respect to the first count, arguing that

second count was barred by the three-year statute of limitations, and on July 8, 1975, granted summary judgment for appellees.[5]

A motion for summary judgment is properly granted only when the pleadings and affidavits in the case show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Super.Ct.Civ.R. 56(c); *see Alger Corp. v. Wesley,* D.C.App., 355 A.2d 794, 797 (1976); *Yates v. District Credit Clothing, Inc.,* D.C.App., 241 A.2d 596, 598 (1968). Furthermore, "one who moves for summary judgment has the burden of demonstrating clearly the absence of any genuine issue of fact, and . . . any doubt as to the existence of such an issue is resolved against the movant." *Malcolm Price, Inc. v. Sloane,* D.C.App., 308 A.2d 779, 780 (1973), *quoting Wittlin v. Giacalone,* 81 U.S.App.D.C. 20, 21–22, 154 F.2d 20, 21–22 (1946). We conclude that appellees here met their burden of showing that no genuine issue of material fact existed with regard to appellants' first claim.

The 1970 contract appellants were attempting to enforce was superceded in June 1971 by an express written contract that was not under seal. The normal statute of limitations for actions on a simple contract is three years from the time the cause of action accrues, D.C.Code 1973, § 12–301(7), and the limitations period for actions not otherwise provided for is three years. D.C.Code 1973, § 12–301(8). Thus, if the cause of action arose in June of 1971 and one of the three-year statutory

limitations periods applies, the action on the first count was properly dismissed. *See Reynolds v. Needle,* 77 U.S.App.D.C. 53, 132 F.2d 161 (1942).

We recognize that an action to rescind a contract is not an action at law "on" the contract in the same sense that a suit to recover damages for breach or to enforce an agreement is an action on the contract. Rescission is an equitable remedy, and an action to rescind does not actually rely on the contract itself. Although equitable actions such as this are not directly governed by legal statutes of limitations, where courts have concurrent jurisdiction of law and equity they often will impose the limitation applicable to an analogous action at law on the corresponding action in equity. *Davis v. Stone,* 236 F. Supp. 553, 557 (D.D.C.1964); *see Curles v. Curles,* 136 F.Supp. 916 (D.D.C.1956), *aff'd,* 100 U.S.App.D.C. 43, 241 F.2d 448 (1957).

As the trial court recognized, appellants' complaint here invoked the court's concurrent jurisdiction of law and equity. In addition, a rescission count in and of itself combines a legal cause of action with an equitable remedy, and therefore application of the legal statute of limitations is appropriate. Whether this particular claim is considered most analogous to a simple contract action or some other action in tort, the correlative limitations period is three years. *See* D.C.Code 1973, §§ 12–301(7), –301(8). Thus we cannot hold that the trial court erred in ruling that ap-

---

the three-year statute of limitations applied to appellants' first count for rescission of the 1971 contract. Appellees therefore are not barred from raising these defenses on appeal.

5. Appellants assert in their brief that in considering appellees' motion the trial court incorrectly applied the standard of proof applicable to summary judgment motions under Super.Ct.Civ.R. 56 rather than the standard used to consider motions to dismiss for failure to state a claim upon which relief can be

granted under Super.Ct.Civ.R. 12(b)(6). However, Rule 12(b) specifically directs the trial court to treat a motion to dismiss under Rule 12(b)(6) as a summary judgment motion when matters outside the pleadings are presented to the court. *See Carter v. Stanton,* 405 U.S. 669, 671, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1972) (per curiam). Here, both sides presented to the court affidavits and exhibits supplementing their pleadings. Hence, the court below did not err in treating this motion as one for summary judgment, and applying the appropriate standard.

pellants' action on the first count was subject to a three-year statutory limit.[6]

Appellants' claim in count one may be characterized as an action to set aside the 1971 contract for fraudulent misrepresentation. The applicable statute of limitations begins to run, in an action such as fraudulent misrepresentation, from the time the parties could have discovered the fraud or misrepresentation. *See Maddox v. Andy's Refrigeration & Motor Co.,* D.C.Mun.App., 160 A.2d 799, 800 (1960); *Wiren v. Paramount Pictures, Inc.,* 92 U.S.App.D.C. 347, 348–49, 206 F.2d 465, 467 (1953), *cert. denied,* 346 U.S. 938, 74 S.Ct. 378, 98 L.Ed. 426 (1954). The misrepresentation alleged here, *viz.,* appellees' statements that the option purchased by appellees from appellants did not include strip mining rights under Pennsylvania law, occurred on or before June 1971, when the parties agreed to settle their lawsuit and enter into a new contract. This alleged misrepresentation, in the exercise of due diligence, should have been ascertained at that time. *Wiren v. Paramount Pictures, supra* at 348, 206 F.2d at 467. Since the complaint was not filed until March 19, 1975, almost four years after the parties executed the second contract, we cannot hold that the trial court erred in ruling that the action on the first count was barred by the three-year statutory limit imposed on the claim.[7]

Appellants also have relied on cases involving fraudulent concealment of facts to support their contention that the statute of limitations is tolled until the plaintiffs actually or constructively discover the truth. *See Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946); *Emmett v. Eastern Dispensary & Casualty Hospital,* 130 U.S.App.D.C. 50, 396 F.2d 931 (1967); *Searl v. Earll,* 95 U.S.App.D.C. 151, 221 F.2d 24 (1954). But here there was no concealment, since the fact appellants allege was misrepresented was a question of construction of a coal option contract under Pennsylvania law. Obviously, such a matter was equally amenable to research and resolution by both parties. And as we have noted, any legal conclusions or opinions concerning the coal option which were not revealed by appellees in June 1971 could in the exercise of due diligence, have been discovered by appellants at any time. *See Westinghouse Electric Corp. v. Burlington,* 122 U.S.App.D.C. 65, 67, 351 F.2d 762, 764 (1965). Since appellants were not prevented from ascertaining the facts or induced to refrain from filing suit, the statute of limitations should not be tolled.[8] *Cf. Searl v. Earll, supra* at 154, 221 F.2d at 27.

With regard to appellants' second count, appellees conceded in their brief and at oral argument, and we agree, that the

---

6. Appellants' reliance on the 12-year statute of limitations for contracts under seal, D.C. Code 1973, § 12–301(6), is misplaced. The rescission action is directed at the *second* contract, which is not under seal, and consequently the applicable limitations period is three years. If the second contract were rescinded and appellants attempted to enforce the underlying contract, then the 12-year limitations period would be observed.

7. The trial court also ruled in the alternative that if appellants' claim was considered to be solely in equity, the action was barred by laches under traditional considerations; that is, the court barred plaintiffs' suit because the delay was lengthy, was not excused, and was prejudicial to the defendant. *See Dollar v. Land,* 87 U.S.App.D.C. 214, 184 F.2d 245, *cert. denied,* 340 U.S. 884, 71 S.Ct. 198, 95 L.Ed. 641 (1950); *Szuch v. Lewis,* 193 F. Supp. 831, 835 (D.D.C.1970). We need not

review this ruling in light of our disposition of the other issues.

8. We also reject appellants' apparent contention, made in their brief but not in the complaint, that appellees' claims that they would have to purchase strip mining rights from the Merrills constituted some sort of false statement which appellants relied on to their detriment in releasing appellees from the first contract. Appellees evidently purchased the strip mining rights from the Merrills in April 1971 and then renegotiated their contract with appellants in June 1971. Appellants now contend that they did not learn of appellees' agreement with the Merrills until proceedings on this motion, and they allege that this concealment was accomplished by appellees in order to secure the June 1971 settlement agreement and releases.

trial court incorrectly dismissed appellants' claim for royalties under the 1971 contract that allegedly had accrued within the three-year period prior to commencement of this action. Contrary to the trial court's ruling, the three-year statute of limitations would not bar appellants' second claim, but would only bar those quarterly royalty payments that were due and not paid more than three years before appellants brought suit. *See Namerdy v. Generalcar,* D.C.App., 217 A.2d 109, 113 (1966). Since appellants have asserted facts that, if true, would entitle them to relief, there were material issues that should not have been disposed of by summary judgment. Consequently this case must be remanded to the trial court for consideration of the second count of appellants' complaint and for a determination of whether any royalties are now due and owing under the 1971 contract.

*So ordered.*

While it is undoubtedly true that appellants agreed to accept a smaller payment for the coal option because they believed that appellees did not own the strip mining rights to the land in question, the material issue at the renegotiation was *not* whether appellees in fact did own the rights at that time, but instead whether the option appellees purchased from appellants transferred those rights to them, so that appellees should pay appellants the total price originally agreed to. It would be disingenuous to contend that appellants relied on the fact that appellees had not purchased the rights from the Merrills when appellants agreed to reduce their payment, when the very reason for appellants' accepting that reduction was the belief that the Merrills still owned the rights and had never transferred them to appellants to transfer to appellees. Indeed, the fact that appellees purchased the rights from the Merrills before renegotiating and reducing their payment to appellants would only serve to reinforce their contention that the option sold by appellants did not include those rights which appellants had warranted they were assigning. Thus, even if appellees did conceal their ownership of the rights in June of 1971, that concealment could not have been relied on by appellants to their detriment.