Beryl BERNAY, Appellant,

v.

Jeanne M. SALES, Appellee.

No. 79–628.

District of Columbia Court of Appeals.

Submitted Jan. 9, 1980.

Decided Dec. 3, 1980.

William L. Fallon, Washington, D.C., was on briefs, for appellant.

A. Slater Clarke and Robert W. Rifkin, Washington, D.C., were on·brief, for appellee.

Before KELLY, NEBEKER and FERREN, Associate Judges.

KELLY, Associate Judge:

Appellant Beryl Bernay appeals from the allowance of a voluntary dismissal of appellee Jeanne M. Sales' complaint against her. For the reasons which follow we reverse and remand this case to the trial court.

On November 9, 1978, appellee Sales filed a complaint against appellant, a resident of New York, alleging alienation of affection, loss of consortium and criminal conversation, arising from appellant's relations with appellee's husband in the District of Columbia and elsewhere "during the year 1978 ... in the late spring ... and during the summer." Appellant did not appear in the action, and on December 20, 1978,·default was entered against her. On January 18, 1979, having learned of her default, appel-

lant filed a motion to dismiss appellee's complaint or, alternatively, to quash service of process. However, on March 26, 1979, the date set for hearing the motions, appellee suddenly filed a praecipe of voluntary dismissal, which was approved ex parte, by then · Superior Court Judge William C. Pryor. Later, apparently at appellant's request, Judge Pryor amended the praecipe to read "with prejudice and with leave to seek costs."

Appellee then filed a motion for reconsideration, objecting to the conditions inserted by the court in the praecipe of dismissal, and on April 19, Judge Pryor voided appellee's voluntary dismissal praecipe. Thereafter, on April 24, 1979, appellee filed a notice of dismissal of her complaint, to which appellant entered an opposition. On May 2, Judge John R. Hess, in a memorandum order held that Super.Ct.Civ.R. 41(a)(1) entitled appellee to a voluntary dismissal of her complaint as a matter of right. That rule reads, in pertinent part:

> [A]n action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs ...

In approving the voluntary dismissal of appellee's complaint without prejudice, the trial judge rejected appellant's argument that because the pending motion was supported by affidavits and pertinent provisions of District of Columbia and New York law it should have been considered a motion for summary judgment, thus barring dismissal as a matter of right under Rule 41(a)(1).

A motion to reconsider was denied on May 24, and appellant noted this appeal on May 30, 1979. For reasons different from those cited by appellant, we agree that ap-

pellee was not entitled to voluntarily dismiss her action, unless with the approval of the trial judge, as required by Super.Ct. Civ.R. 41(a)(2), and therefore remand this case for the exercise of the trial court's discretion regarding allowance of a voluntary dismissal by appellee.

Though we cannot say that the trial court was required to treat appellant's motion as an answer or as a motion for summary judgment, we nevertheless conclude that the purposes of Rule 41(a) would be violated by voluntary dismissal of the appellee's cause of action. Under the facts of this case, such dismissal should be subject to the trial court's discretionary judgment, rather than to the appellee's choice of litigation tactics. Our approach accords both with the dictates of Super.Ct.Civ.R. 1 that the rules be "construed to secure the just, speedy, and inexpensive determination of every action," and with the judicial preference for resolution of cases on their merits. See *Clark v. Moler*, D.C.App., 418 A.2d 1039, 1041 (1980); *Jones v. Hunt*, D.C.App., 298 A.2d 220, 221 (1972).

■ This appeal represents one of the rare cases justifying application of the approach set forth in *Harvey Aluminum, Inc. v. American Cyanamid Co.*, 203 F.2d 105 (2d Cir.), *cert. denied*, 345 U.S. 964, 73 S.Ct. 949, 97 L.Ed. 1383 (1953) and *Tele-Views News Co., Inc. v. S.R.B. TV Publishing Co., Inc.*, 28 F.R.D. 303 (E.D.Pa.1961), representing a departure from a strictly literal reading of Rule 41(a)(1). We agree with *Harvey* that (1) where the merits of a controversy are fully presented to a court and (2) where the defendant has expended considerable amounts in establishing his defense and (3) the "plaintiff's chances of success are virtually nil," a plaintiff should not be allowed to dismiss.[1]

---

1. We recognize that courts have been reluctant to apply the liberal approach to Rule 41(a)(1) found in *Harvey* and *Tele-Views News*, generally because of a refusal to find that the merits of the controversy were presented to the court before plaintiff's notice of dismissal. *See D.C. Electronics, Inc. v. Nartron Corp.*, 511 F.2d 294, 297 (6th Cir. 1975); *Sheldon v. Amperex Elec-* *tronic Corp.*, 52 F.R.D. 1, 7 (E.D.N.Y.1971); 9 C. Wright & A. Miller, Federal Practice & Procedure § 2363, at 147–58 (1971). *See also Thorp v. Scarne*, 599 F.2d 1169 (2d Cir. 1979) (refusing to extend the rationale of *Harvey* and noting the "cool reception" accorded to that decision). We are convinced however that in the instant case not only were the merits of the

However, we do not hold that a plaintiff's right to voluntarily dismiss is barred whenever the merits of a controversy are presented to the court in any manner. *See Pilot Freight Carriers, Inc. v. International Brotherhood of Teamsters*, 506 F.2d 914, 916 (5th Cir.), *cert. denied*, 422 U.S. 1048, 95 S.Ct. 2665, 45 L.Ed.2d 700 (1975) (refusing to follow *Harvey* because "[n]o such claim of patent insubstantiality is made here"). Voluntary dismissal as a matter of right is prohibited under the *Harvey* rule only upon a showing that all three of the factors discussed in that case are present.

It is significant that Rule 41 itself has considerably curtailed the traditional practice of nonsuit and narrowed the boundaries of a plaintiff's unfettered right to voluntary dismissal. At common law, a plaintiff had a right to dismiss his suit without prejudice at any stage of the litigation till a verdict was returned or a judgment entered. *American Electrotype Co. v. Kerschbaum*, 70 U.S.App.D.C. 241, 105 F.2d 764 (1939). *See* Head, *The History and Development of Nonsuit*, 27 W.Va.L.Q. 20 (1920). This of course subjected the defendant to the possibility of repeatedly defending the same claim without ever obtaining the res judicata benefits of an adjudication either on the merits or on jurisdictional grounds.

Rule 41 of the Federal Rules of Civil Procedure, adopted unchanged by the Superior Court, was designed to minimize the abuses of absolute dismissal by restricting a plaintiff's right to unilaterally dismiss in two ways. First, under Rule 41(a)(1), a plaintiff can obtain only one voluntary dismissal on the same claim. This limits somewhat the possibility of vexatious litigation,

at least in jurisdictions having adopted this rule or its equivalent. But there remains the possibility that a defendant would have to twice defend the same meritless claim at double the cost and time required to defend it once. Second, Rule 41(a) has limited the plaintiff's absolute right of nonsuit to the early stages of litigation, and has made voluntary dismissal at all other stages subject to the discretion of the trial judge in accordance with Rule 41(a)(2).

The rule as originally enacted provided that the plaintiff's right would end with the defendant's filing of an answer. The 1946 amendments to the rule broadened this limitation to bar voluntary nonsuit after the defendant had filed a motion for summary judgment.[2]

In the present case, however, there were no filings labeled "answer" or "motion for summary judgment." Furthermore, the trial judge did not actually, and was not required to treat appellant's 12(b)(6) motion as one for summary judgment. Under Rule 12(b), the court must convert a Rule 12(b)(6) motion into a motion for summary judgment when "matters outside the pleadings are presented to and not excluded by the court." *See Doolin v. Environmental Power Ltd.*, D.C.App., 360 A.2d 493, 496 n.5 (1976) (adopting the rule in *Carter v. Stanton*, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972)).

■■■ Neither the affidavits filed in support of appellant's other Rule 12(b) motions, nor the cited provisions of District of Columbia and New York law can be construed as the necessary extra pleading matters for purposes of converting a Rule 12(b)(6) motion into a motion for summary judgment.[3]

controversy fully before the court, but that other similarities to the *Harvey* case are consistent with application of its approach.

2. The Committee Note to the amendment explains that "[s]ince such a motion may require even more research and preparation than the answer itself, there is good reason why the service of the motion, like that of the answer, should prevent a voluntary dismissal by the adversary without court approval." 5 Moore's Federal Practice ⁋ 41.01[4], at 41–48 (2d ed. 1980).

3. For a review of what constitutes "matters outside the pleadings" for purposes of converting a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment, *see* Annot., 2 A.L.R.Fed. 1027 (1969). " 'Matters outside the pleadings' (other than, but frequently together with, affidavits) which have been sanctioned, without discussion, to convert a motion under Rule 12(b)(6) or (c), into a motion for a summary judgment, include depositions, answers to interrogatories, admissions, oral testimony, exhibits, documents and rec-

The affidavits attached to appellee's consolidated motion to dismiss related to improper service of process and were irrelevant to her 12(b)(6) motion. It is also well settled that memoranda of points and authorities do not constitute "matters outside the pleadings" under Rule 12(b). *Sardo v. McGrath*, 90 U.S.App.D.C. 195, 196 F.2d 20 (1952); *Richardson v. Rivers*, 118 U.S.App. D.C. 333, 335 F.2d 996 (1964).[4]

Nevertheless, we find that appellee should not be allowed to take advantage of her failure to give proper notice to appellant, *see* note 5 *infra*, by dismissing her action voluntarily and without prejudice after the appellant had belatedly learned of the litigation and presented a complete defense on both jurisdictional and substantive grounds. *See* discussion below. Appellant could not have answered or moved for summary judgment before the default was entered against her because she was unaware of the lawsuit. After the entry of default, her counsel may have considered such filings inappropriate either in order to avoid conceding personal jurisdiction over appellant, or because Super.Ct.Civ.R. 55(c) provides that when a defense of personal or subject matter jurisdiction is asserted, no answer need be filed to set aside a default.

■ The purpose of Rule 41(a)(1) is to limit voluntary dismissal as a matter of right to the early stages of litigation and to prevent a plaintiff's running for cover after the defendant has expended significant efforts and has presented a substantial defense. In *Harvey, supra*, the plaintiff had sued on a contract for the sale of a factory, requesting specific performance and an injunction *pendente lite* to restrain the defendant from selling the assets in question to a third party. After denial of the preliminary injunction, plaintiff sought voluntary dismissal, planning to sue again in another jurisdiction. The appellate court in *Harvey* held that plaintiff could not dismiss because of the significance of the hearing on the preliminary injunction and of defendant's preparation for it and because of the insubstantiality of the plaintiff's claims.

In *Tele-Views News, supra*, the court rested its decision to deny voluntary dismissal under Rule 41(a)(1) alternatively on the fact that defendant's Rule 12(b)(6) motion was to be considered as a motion for summary judgment and on the fact that the motion had presented the court with the opportunity to make a final determination of the entire controversy on the merits. Both decisions were concerned with the possibility of subjecting defendants to multiple lawsuits and with the amounts of preparation and legal fees already expended.

■ In the present case, the merits of the controversy were also fully presented to the court. The defenses set forth by appellant were factually and legally as complete and dispositive as they needed to be given the apparent frivolity of appellee's claim. Whether or not the merits of a case are fully presented will naturally depend on the

---

ords from prior proceedings, stipulations or agreed statements of fact, alleged defamatory matter in a libel action, a collective bargaining agreement, and miscellaneous other items such as copyright registration certificates, certified copies of National Guard orders, and correspondence." *Id.* at 1037–38.

4. However, we note that the trial judge would have been within the bounds of his discretion in treating the appellant's Rule 12(b)(6) motion as a Rule 56 motion for summary judgment by giving the parties notice of his intention to grant summary judgment and adequate opportunity to present affidavits or other matters appropriate to a ruling on such a motion. 5 C. Wright & A. Miller, Federal Practice & Procedure § 1366, at 176 (Supp.1980) (citing *Scott v.*

*Dollahite*, 54 F.R.D. 430 (N.D.Miss.1972)); *Kron v. First Federal Savings & Loan Ass'n of Hattiesburg*, 449 F.2d 865 (5th Cir. 1971) (summary judgment treatment accorded to defendant's 12(b)(6) claim in action to quiet title after parties given opportunity to discover whether defendant had interest in land). This is essentially what the court did in *Doolin v. Environmental Power Ltd., supra*, when it granted summary judgment after a determination that the applicable statute of limitations had run, though the defendant had only moved to dismiss the complaint for failure to state a claim. In that case, however, affidavits and other exhibits were already on file, making it unnecessary for the court to grant an extension of time for filing of extra-pleading matter.

complexity of the claims and defenses asserted and on the type of relief sought. In an action seeking money damages only, where a defendant sets forth a specific statutory abrogation of the cause of action alleged, just as where he asserts the statute of limitations as a bar, the "merits" of the case can be resolved by a relatively straight-forward determination that the plaintiff has no cause of action upon which to sue.

In the instant case, appellant has set forth persuasive showings of improper service of process,[5] lack of personal jurisdiction[6] and failure to state a claim upon which relief could be granted. Of course, only her arguments relating to the Rule 12(b)(6) motion touched upon the substantive merits of appellee's claim. Appellant's references to D.C.Code 1978 Supp., § 16–923,[7] and to the case of *Hanfgarn v. Mark,* 274 N.Y. 570, 10 N.E.2d 556 (1937),[8] as having abolished the causes of action upon which appellee relies in the District of Columbia and New York, respectively, are well founded and sufficient to dispose of the merits.

The only matters to be resolved by the trial court were whether appellant was in fact alleging causes of action which had been abolished and when the acts constituting the alleged causes of action occurred. A mere reading of the complaint and appellee's memorandum of points and authorities in support of plaintiff's opposition to dismiss reveals that in count I of her complaint appellee alleges that appellant alienated the affections of appellee's husband and that in count II she alleges acts formerly constituting criminal conversation.[9] The complaint also states that appellant's rela-

---

5. Appellant has steadfastly maintained that she was never served with a copy of a summons or complaint; that a notice of default was her first knowledge of the action. Her alternative motion to quash service of process was supported by affidavits making it clear that the special process server could not have served her at her residence at 10:00 a. m., on November 16, 1978, as attested in his affidavit of service, since appellant was not at home at that time. The special process server thereupon filed a new affidavit attesting that service was made at 10:30 p. m. that day. Further affidavits were filed by appellant making it equally clear that she was not served with process at that hour, a time when she was in her apartment talking with two police officers.

6. The complaint's jurisdictional predicates were D.C.Code 1973, §§ 11–921 and 13–423 (the District of Columbia long arm statute). The latter, in pertinent part, allows a District of Columbia court to assert "personal jurisdiction based upon conduct" over a person who causes "tortious injury in the District of Columbia by an act or omission in the District of Columbia" (D.C.Code 1973, § 13–423(a)(3) or who causes "tortious injury in the District . . . by an act or omission outside the District . . . if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District . . . ." (D.C. Code 1973, § 13–423(a)(4)).

But appellee failed to allege "tortious injury in the District" under either § 13–423(a)(3) or (4) because the District of Columbia abolished this action by statute. *See* notes 7–8 *infra.* Since appellant is a resident of New York (who,

according to her affidavit, filed on January 24, 1979, has "visited Washington, D.C. only as a tourist and never for longer than two days over a weekend" and has "never transacted any business" here other than telephone calls) and was alleged to have caused an injury which was not tortious in the District either early in 1978, when it was alleged to have occurred, or in November 1978, when appellee's suit was filed, no jurisdiction can be asserted over her person under this jurisdiction's long arm provisions. *See Margoles v. Johns,* 333 F.Supp. 942 (D.D.C.1971), *aff'd,* 157 U.S.App.D.C. 209, 483 F.2d 1212 (1973).

7. This statute, made effective April 7, 1977, provides that "[c]auses of action for breach of promise, alienation of affections, and criminal conversation are hereby abolished." D.C.Law 1 107, title I, § 111(a), 23 D.C.R. 8737.

8. This case, amending a prior opinion recorded at 274 N.Y. 22, 8 N.E.2d 47, *appeal dismissed,* 302 U.S. 641, 58 S.Ct. 57, 82 L.Ed. 498 (1937), upheld the constitutionality of the New York statutes abolishing the rights of action for alienation of affection and criminal conversation.

9. Appellee's memorandum of points and authorities in support of plaintiff's opposition to dismiss at p. 4 specifically uses the designation "alienation of affection" and "criminal conversation" in referring to her causes of action in this case. For a discussion of what formerly constituted these two causes of action, *see Dodge v. Rush,* 28 App.D.C. 149 (1906).

tions with appellee's husband "commenced" and that her acts took place in the late spring and during the summer of 1978, one year after the alleged causes of action were abolished in the District of Columbia and 43 years after they were abolished in New York, see *Hanfgarn, supra*.[10]

We are also persuaded to rule as we do by the fact that appellant has gone to the trouble and expense of hiring counsel, obtaining affidavits from four witnesses, including her counsel, preparing two lengthy affidavits herself, see note 5 *supra*, and contacting other potential witnesses regarding the lack of any service of process upon her of the complaint and summons in this action. Appellant was also in regular contact with her attorney during the winter of 1978–1979, concerned that appellee was intent upon bringing her into court for harassment purposes.[11] The costs and legal fees thus incurred by appellant, while perhaps small in comparison with the costs of pretrial preparation in much modern federal litigation, are nonetheless significant considering the burden they represent to appellant. To a private party, the monetary and psychic costs of litigation over personal matters of this nature are unusually severe.[12]

Finally, it is also evident from the record and the pleadings that the appellee's chances of success on the merits of this case are extremely remote, and that appellant's motion to dismiss the complaint with prejudice must be granted unless new evidence is produced regarding the time and place of the appellant's allegedly tortious acts.

This cause is remanded to the trial court for further proceedings consistent with this opinion and with leave for the appellee to seek voluntary dismissal with court approval under Super.Ct.Civ.R. 41(a)(2). The award of costs and attorney's fees is also left for the trial judge's determination.

*So ordered.*

FERREN, Associate Judge, dissenting:

I agree with the majority that the trial court was not required to treat appellant's motion under Super.Ct.Civ.R. 12(b)(6) as an answer or a motion for summary judgment, which would have permitted dismissal only with court approval. *Ante* at 125; see Super.Ct.Civ.R. 41(a)(1)–(2). I would affirm, however, on the ground that appellee accordingly had a right to voluntary dismissal under Super.Ct.Civ.R. 41(a)(1).

I would not avoid this result by invoking the exception to Rule 41(a)(1) suggested in *Harvey Aluminum, Inc. v. American Cyanamid Co.*, 203 F.2d 105, 107–08 (2d Cir.), *cert. denied*, 345 U.S. 964, 73 S.Ct. 949, 97 L.Ed. 1383 (1953). Courts have severely criticized and rarely followed *Harvey*. The case is in derogation of Rule 41(a), which itself reflects a compromise as to the ease and frequency with which a plaintiff can voluntarily dismiss a lawsuit. *See generally* 5 Moore's Federal Practice ¶ 41.02[3], at

10. Since under Super.Ct.Civ.R. 9(f) allegations of time and place are material, they must be specifically alleged in the complaint. Appellee cannot come into court to conduct discovery regarding the time and place of the acts of which she complains. *See Reynolds Metals Co. v. McCrea*, D.C.Mun.App., 99 A.2d 84, 85 (1953) ("When it appears from the face of a complaint that the action was not brought within the time permitted by the statute, then it is correct to say that the complaint fails to state a claim upon which relief can be granted.").

11. *See* affidavit of Ralph C. Goldman, dated March 21, 1979 at p. 5.

12. In a recent Maryland case holding that the right of action for criminal conversation was abolished, the Court of Appeals stated that

"[t]he action for criminal conversation is notorious for affording a fertile field for blackmail and extortion because it involves an accusation of sexual misbehavior. Criminal conversation actions may frequently be brought, not for the purpose of preserving the marital relationship, but rather for purely mercenary or vindictive motives. An award of damages does not constitute an effective deterrent to the act of adultery, and it does not effectively help to preserve or restore a marital relationship in which adultery has already occurred." *Kline v. Ansell*, 287 Md. 585, 588, 414 A.2d 929, 931 (1980). Indeed, appellee filed an action against her husband for divorce and adultery, later amending her complaint to state an action for legal separation. *Sales v. Sales*, No. D- 3992–78 (D.C.Super.Ct., filed Dec. 12, 1978).

41–32 to –34 (2d ed. 1980); 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2363, at 156–58 (1971 & Supp.1980).

If this court is to bring *Harvey* into this jurisdiction, I would reserve its invocation for a case more compelling on the facts. In this case, it appears unlikely that the appellee will sue again, at least on the facts alleged here, because the cause of action appears to be barred both in the District of Columbia, *see* D.C.Code 1978 Supp., § 16–923 and in New York, *see Hanfgarn v. Mark*, 274 N.Y. 22, 27, 8 N.E.2d 47, 48, *modified*, 274 N.Y. 570, 10 N.E.2d 556, *appeal dismissed*, 302 U.S. 641, 58 S.Ct. 57, 82 L.Ed. 498 (1937).