### HELVERING, Commissioner of Internal Revenue, v. HELMHOLZ.*

### No. 6219.

United States Court of Appeals for the District of Columbia.

Argued Nov. 13, 1934.

Decided Dec. 31, 1934.

Frank J. Wideman, Sewall Key, Robert H. Jackson, and Morton K. Rothschild, all of Washington, D. C., for petitioner.

James Quarles, of Washington, D. C., for respondent.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

This case involves a deficiency assessment of estate taxes on the estate of Irene C. Helmholz, deceased.

Mrs. Helmholz died a resident of Wisconsin in 1927, and the applicable statute is the Revenue Act of 1926 (44 Stat. 9, §§ 301, 302 [26 USCA §§ 1092–1094]).

By a trust indenture dated June 7, 1918, and a supplemental indenture dated June 11, 1918, Mrs. Helmholz transferred to a corporate trustee 999 shares of the capital stock of the Patrick Cudahy Family Company, a corporation organized under the laws of Wisconsin. Patrick Cudahy (her father), his wife, and his other children also were parties to the trust agreement and made similar transfers of the same stock.

The trust indenture provides that the trustee shall receive all dividends paid on all the shares of stock transferred to it, and presumably had for its object the retention of this stock in the custody of the family and their descendants. By its terms,

*Writ of certiorari granted 55 S. Ct. 657, 79 L. Ed. —.

each subscriber was entitled to receive during his lifetime his share of the net dividends received in respect of the property contributed by him to the trust estate, and also the right to designate by last will and testament a natural person to whom the dividends should thereafter be paid, but only during the life of the appointee, and with a specific provision that none of the capital stock of the company so transferred to the trustee should be distributed to any such testamentary appointee. If no designation is made by appointment, the dividends after the death of the subscriber are payable to the issue of the subscriber, and, in the event of failure of issue, the dividends are payable to the other subscribers equally. At the expiration of the trust, the trustee is required to distribute the corpus of the trust to the issue of the particular subscriber if there is issue; if not, to the issue of the other subscribers, and upon a total failure of all issue to a named charity. The indenture provides that the term of the primary trust shall end "(1) upon the death of the last surviving grandchild of Patrick and Anna M. Cudahy, they being then deceased; or (2) upon delivery to the said trustee of a written instrument signed by all of the then beneficiaries, other than testamentary appointees, declaring said trust term at an end; or (3) upon delivery to said trustee of a copy (certified by the president or secretary of the Patrick Cudahy Family Company, and under its corporate seal) of a resolution adopted by unanimous vote of the board of directors of said corporation declaring said trust term at an end." The agreement also provides for termination upon the dissolution of the Patrick Cudahy Company for any cause provided by law, or upon the extinction of issue of Patrick and Anna Cudahy, they being then dead.

Irene C. Helmholz, by will, made a valid exercise of the power of appointment reserved in the indenture in favor of her husband. The articles of incorporation and by-laws of the Patrick Cudahy Family Company contain a provision forbidding the transfer of any stock in the corporation until the same has been offered to the board of directors for sale to the then stockholders at par; and provide that this condition shall be indorsed in writing on the face of the certificates. The Commissioner treated the shares transferred by Mrs. Helm-

holz as passing at her death and subject to the estate tax, and, in arriving at the amount of the deficiency, valued the stock in the Patrick Cudahy Family Company at $320 a share. The Board of Tax Appeals, on the petition of Waldemar R. Helmholz as executor and legatee under the will of Mrs. Helmholz, held against the Commissioner. They said: "In the instant proceeding, Mrs. Helmholz had irrevocably disposed of the corpus of the trust, and that property went to the remaindermen designated in the trust agreement, upon the termination of the trust. She had no power to alter, amend, or revoke the trust instrument that would effect such a disposition as was possible in the Porter case [1] and bring the property within the purview of subdivision (d)."

From the decision of the Board, the Commissioner appeals, and in the argument and in the brief the only questions presented and urged are, first, whether the shares of stock which Mrs. Helmholz placed in the trust should be included in her gross estate under section 302 of the Revenue Act of 1926 (26 USCA § 1094); and, if this question is answered in the affirmative, then, second, the value of the stock at the date of Mrs. Helmholz's death. The deficiency found by the Commissioner amounted to $2,653.47.

Section 302 (d) of the Revenue Act of 1926 (26 USCA § 1094 (d) provides that the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, to the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone, or in conjunction with any person, to alter, amend, or revoke the trust. Relying on this section, the Commissioner tells us that under the trust agreement there were listed a number of contingencies, any one of which might have occurred, under which the trust would terminate. In such event, the Commissioner says, the corpus was to revert to the settlors. Therefore, he says, none of the remainder beneficiaries had the enjoyment of the property during the life of the settlor, and none acquired by the indenture the absolute and unconditional right to future possession and enjoyment. But

---

[1] Porter v. Commissioner, 288 U. S. 436, 53 S. Ct. 451, 77 L. Ed. 880.

we are unable to follow the Commissioner's argument in this respect, and we think it perfectly obvious, as the Board found, that in the trust agreement Mrs. Helmholz divested herself completely of legal title to the shares contributed by her to the trust estate and merely reserved a life interest in the income and a limited power of appointment respecting it; and, if we are correct in this conclusion, it follows that the value of the shares of stock which she transferred to the trust some nine or ten years before her death could not legally be included in determining the amount of her estate. Nor do we find anywhere in the trust agreement a power to revoke its provisions or to change its terms or to cancel it. The trust instrument defines, not the revocation, but the duration of the trust. As to the latter, however, it provides no more than that it shall end upon the happening of certain named incidents, none of which the decedent could control; that is to say, first, upon the death of the last surviving grandchild of the parents of Mrs. Helmholz, an event which could not be determined while Mrs. Helmholz lived, and which consequently carried the duration of the trust beyond the period of her life and made immediately effective the rights and interests of her "issue" if she had any, or the right of the other settlors or their issue to take, if she left no issue; second, upon a writing signed by *all* the *then* beneficiaries (other than testamentary appointees). Obviously, this gave no power to Mrs. Helmholz to revoke the trust. Granted she became, by virtue of the reservation of a life estate in the income, *one* of the beneficiaries, she is only one. Her issue, if she has any, from the moment of the making of the trust, are potential beneficiaries. Her father and mother, as well as her brothers and sisters, are likewise potential beneficiaries, and so is the issue of all of them. And nothing is better settled under the statutes, as of the time we are speaking, than the proposition that, where the revocation of a trust depends for its exercise upon the assent of the beneficiaries, it is not within the statute. On the contrary, where the transfer is complete and its terms fixed, the properties are not made subject to tax because of passing of title from life tenant to remainderman at or after the settlor's death. United States v. Wells, 283 U. S. 102, 51 S. Ct. 446, 75 L. Ed. 867; Bromley v. McCaughn, 280 U. S. 124, 50 S. Ct. 46, 74 L. Ed. 226.

The trust agreement as a whole clearly shows that no one of the subscribers can take any action to terminate the trust or retake his or her contribution to the trust, without the assent and co-operation of all, and this is enough to make the transfer absolute as of the date of the agreement. See Reinecke v. Trust Co., 278 U. S. 339, 49 S. Ct. 123, 125, 73 L. Ed. 410, 66 A. L. R. 397. In that case the decedent had created five trusts, one for his wife and his four children, and one for each of the four children. The instrument provided that the settlor might alter, change, or modify in any respect and to any extent at any time the trusts for the benefit of the children with the consent of the beneficiary therein, and the trust for the benefit of the wife and children with the consent of a majority of the beneficiaries. The Commissioner there claimed that these provisions, and others not found in the instrument here in review, brought the trusts within the provisions of the Revenue Act of 1921, 42 Stat. 227. But the Supreme Court, speaking of the power reserved in the settlor, said: "He could not effect any change in the beneficial interest in the trusts without the consent, in the case of four of the trusts, of the person entitled to that interest, and in the case of one trust without the consent of a majority of those so entitled. Since the power to revoke or alter was dependent on the consent of the one entitled to the beneficial, and consequently adverse, interest, the trust, for all practical purposes, had passed as completely from any control by decedent which might inure to his own benefit as if the gift had been absolute." This case was followed by McCormick v. Burnet, Commissioner, 283 U. S. 784, 51 S. Ct. 343, 75 L. Ed. 1413. In that case Mrs. McCormick established a trust for her three children and their descendants. The trust was to terminate on the death of the survivor of the three children. It could be terminated earlier, (1) while she lived by a writing signed by her and any child, and (2) after her death by a writing signed by a majority of her beneficiaries of lawful age. If the trust were terminated, the properties reverted to her if she were alive; otherwise they went one-third to each child, if then living, etc. The Supreme Court, following the Reinecke Case, overruled the contentions of the Commissioner, and held in effect *the trust was an inter vivos transfer and not subject to tax.*

In the case of Dort v. Helvering, 69 F.(2d) 836, decided by us within the year, we were dealing with a case involving the reserved right to change the beneficial interests. In that case the question of the revocation of the trust was not involved, nor was the power to change dependent upon the consent of the beneficiary; all that we decided there was that the right to "change" which was reserved involved the right to appoint new or different beneficiaries rather than, as was contended, only the mechanics of the trust. It is not, therefore, as the Commissioner claims, authority in the present case. Here the question is not the power to alter or amend, but the power to revoke, and since that power, if it exists at all, is subject to the concurrence of others whose interests are antagonistic, it is a bootless right which, so long as it is unavailed of, leaves the property of the trust outside the provisions of the statute.

And this is so, as the Supreme Court said in the Reinecke Case, because, the decedent being without power to terminate the trust, the trust indenture and not the death is the generating source of the interests that came into enjoyment and possession at decedent's death.

■ The Board held, also, that the life interest in the income of the trust estate passing to respondent should not be included in the gross estate of decedent under subdivision (f) of section 302 (26 USCA § 1094 (f). The Board's holding was grounded on the fact that the reserved power of appointment was a special and not a general power. We have not considered the question on this appeal, for it is not raised by any of the assignments of error, nor was it argued or insisted on in brief or oral argument.

Affirmed.