**E. George PAZIANOS, Appellant,**

**v.**

**Margaret SCHENKER et al., Appellees.**

**Margaret SCHENKER et al., Appellants,**

**v.**

**E. George PAZIANOS, Appellee.**

**Nos. 10080, 10088.**

District of Columbia Court of Appeals.

Argued June 22, 1976.

Decided Dec. 8, 1976.

L. Chris Lampros, Washington, D.C. for appellant in No. 10080 and appellee in No. 10088.

John C. La Prade for appellees in No. 10080 and appellants in No. 10088.

Before FICKLING, KERN and YEAGLEY, Associate Judges.

FICKLING, Associate Judge:

This case involves an appeal and cross-appeal from a judgment in favor of appellees Margaret and Herman Schenker (hereafter the Schenkers) on their counterclaim for the balance due on a promissory note executed by appellant E. George Pazianos. The court below determined that a fee charged by the Schenkers to extend Pazianos' payments an additional two years rendered the note usurious.[1] The issues before us are whether the Schenkers charged usurious interest, and whether finding an extension fee to be usurious requires the forfeiture of interest that accrued prior to the extension agreement.

The facts are not in dispute. In January 1966, Pazianos contracted to purchase a house located in the District of Columbia. At that time, he commissioned Jack S. Poms, a real-estate broker licensed in the District, to help in obtaining funds for the down payment. Poms was engaged in the business of securing second trust financing for prospective homeowners, and the Schenkers had purchased several similar promissory notes through him over the years. Poms informed the Schenkers that he had a second trust note with a face val-

---

1. D.C.Code 1973, § 28–3301, states:

Except as otherwise provided in section 28–3308, and chapter 36 of this subtitle, the parties to an instrument in writing for the payment of money at a future time may contract therein for the payment of interest on the principal amount thereof at a rate not exceeding 8 percent per annum.

ue of $5,500, bearing 6% interest, that could be purchased for $4,400. The Schenkers agreed to purchase the note.

When Pazianos went to settlement on his house, he executed a note in favor of one Leo Martini in the amount of $5,500, with interest at the rate of 6% per annum. The note was payable in monthly installments of $55 for five years, at which time a final balloon payment of $3,644.06 would be due. The note was secured by a second deed of trust on the house.

Martini, acting as a "straw man," endorsed this note in blank and delivered it to Poms, who then gave his own check in the amount of $4,000 to the settlement agent. Later, Poms delivered the note to the Schenkers in exchange for $4,400. Poms kept $400 as his fee for arranging the transaction.[2]

Pazianos paid the monthly installments on the note until February 26, 1971, when the final balloon payment became due. He was unable to make that payment, but after negotiations with the Schenkers and Poms, an agreement was reached to extend the note for an additional two years in exchange for an extension fee of $570.89. Under this new agreement, Pazianos contined to pay monthly installments of $55 until January 26, 1973, when the balloon payment again became due.[3]

Pazianos refused to make the final payment, and on February 1, 1973, he brought an action against the Schenkers arguing that the entire transaction was usurious. Pazianos demanded that the note be marked "paid and cancelled," that all interest paid on the note be credited to principal, and that any excess be awarded to him by the court. The Schenkers counterclaimed for the balance due on the note.

In a nonjury trial, the court below concluded that the extension fee was interest and that its effect was to increase the interest on the loan to 11.2% per annum, thereby making the transaction usurious. Having reached this conclusion, the court credited all interest paid during the original five-year term of the note and during the two-year extension period against the unpaid balance still due on the note. By using this approach, the court determined that Pazianos owed the Schenkers $1,045 in unpaid principal, and entered judgment for them in that amount.[4] This appeal followed.

Pazianos contends on appeal that the trial court should have calculated the amount of principal outstanding based upon the $4,000 Pazianos received from Poms, and not on the $5,500 face value of the note. We disagree. The Schenkers, in their cross-appeal admit agreeing to extend payment on the note in return for the extension fee, but contend that they lacked the requisite intent to create a usurious contract. In the alternative, they contend that even if the extension contract was usurious, that usury did not absolve Pazianos of his duty to pay the interest due on the original note. We disagree with the Schenkers' intent argument, but we agree that the extension fee, standing alone, did not vitiate the original transaction.

It is obvious that the imposition of the extension fee in the instant case rendered the extension contract usurious. It is well-settled that a bonus paid to a creditor for the continued use of money is interest, regardless of what that bonus is called. *Bowen v. Mount Vernon Savings Bank*, 70 App.D.C. 273, 105 F.2d 796 (1939); *Von Rosen v. Dean*, 59 App.D.C. 359, 41 F.2d 982 (1930). The effect of the

---

2. The trial court found that Poms was acting as Pazianos' agent in arranging this transaction.

3. The $570.89 extension fee was added to the principal due on the note.

4. $3,537.96 = unpaid principle on $5,500 note
   −2,492.96 = total interest paid
   _____
   $1,045.00

$570.89 extension fee, added to the 6% interest already payable on the note, was to impose interest well in excess of the 8% allowable under D.C.Code 1973, § 28–3301.

■ The formula for determining the effect of an additional fee levied for the use of money, over and above the stated interest rate, was enunciated by this court in *Montgomery Federal Savings & Loan Ass'n v. Baer*, D.C.App., 308 A.2d 768 (1973). Under that formula, the additional fee is to be prorated over the entire payment period—here, the two years contracted for under the extension agreement. The prorated amount, plus the stated interest (6%), is then divided by the principal balance at the time of the extension contract. In the instant case, this yields an actual interest rate of 16.9% per annum.[5]

■ The Schenkers' contention that they lacked the requisite intent to commit usury is without merit. The record before us reveals that the Schenkers were directly involved in the negotiations that culminated in the extension agreement. Furthermore, they specifically agreed to extend the due date of the final balloon payment in return for the usurious extension fee. Their intent can be inferred from these circumstances. *Searl v. Earll*, 95 U.S. App.D.C. 151, 154 n. 5, 221 F.2d 24, 27 n. 5 (1954). Moreover, it has long been the rule that ignorance of the law will not protect a party from the penalties of usury, unless the imposition of the usurious rate was as a result of mistake or accident. *Lloyd v. Scott*, 29 U.S. (4 Pet.) 205, 222, 7 L.Ed. 833 (1830). Rather than showing a mistake or accident, the record before us indicates a clear intent by the Schenkers to extend the deadline of the original note in return for a usurious fee.

■ Having held that the extension fee rendered the note usurious, the trial court determined that *Montgomery Federal Savings & Loan Ass'n v. Baer, supra*, required forfeiture of the interest charged under the original five-year agreement, as well as the interest charged under the two-year extension agreement. This was a misapplication of *Baer*. It is true that when a contract is tainted with usury, all of the interest charged by the creditor is forfeited.[6] *Carter v. Carusi*, 112 U.S. 478,

---

[5] The trial court's conclusion that the effective interest rate was 11.2% was reached by prorating the extension fee over a seven-year period (five years under the original agreement and an additional two years under the extension agreement).

It is true that in *Baer* "points" paid to obtain a loan were prorated over the entire period because they were paid "in consideration of the lender making the full loan for the entire term." *Baer, supra* at 773. Here, however, the extension fee was paid specifically for an additional two-year grace period. In such a situation, the fee should only have been prorated over the two-year period to which it related.

.06 x $5,500.00 = $330.00 stated annual interest
½ x    570.89 =   285.44 additional annual interest

                             $615.44 total interest charged per year

$5,500.00 = principal of original note
—1,855.94 = principal paid prior to extension contract

$3,644.06 = principal due under extension contract.
$615.44 ÷ $3,644.06 x 100 = 16.9% effective annual interest.

---

6. D.C.Code 1973, § 28–3305, states in part:

In an action upon a contract for the payment of money with interest at a rate forbidden by law, any payment of interest that may have been made on account of the contract is deemed to be payment made on account of the principal debt; and judgment shall be rendered for no more than the balance found due after deducting and properly crediting the interest so paid. . . .

5 S.Ct. 281, 28 L.Ed. 820 (1884); *Cockrell v. First Federal Savings & Loan Ass'n*, D.C.Mun.App., 33 A.2d 621 (1943); *Searl v. Earll, supra*. However, in the present case there are two separate contracts: the initial $5,500 note payable in five years, and the usurious extension of that note for an additional two years. It is the rule in this jurisdiction that the extension of a note is a separate contract, and that a usurious extension agreement does not require the forfeiture of interest charged under the original obligation. *Brown v. Clark*, 14 D.C. (3 Mackey) 185, 188 (1884); *see Richards v. Bippus*, 18 App.D.C. 293, 305 (1901). We find nothing in *Baer* that requires us to change this long-standing rule.

Pazianos' contention that the principal sum due the Schenkers should have been based on the $4,000 he actually received, and not on the $5,500 face value of the note, fails under this analysis. Since the two contracts are to be treated separately, the principal sum still due the Schenkers is the principal balance at the time of the extension agreement.[7] The record shows this amount to be $3,644.06. After entering into the extension agreement, Pazianos made payments to the Schenkers totaling $1,210.[8] This amount should be credited against the amount owed the Schenkers, leaving $2,434.06 still due them.[9] The judgment in favor of the Schenkers should be modified to reflect that amount rather than the $1,045 figure the trial court arrived at.

 In their respective briefs as appellants, the parties did not raise the issue of whether the original loan was itself tainted with usury prior to the extension agreement. It is well-settled that an issue not raised by a specific assignment of error need not be considered on appeal.[10] *Parry-Hill v. Downs*, D.C.Mun.App., 148 A.2d 715 (1959); *Helvering v. Helmholz*, 64 App.D.C. 114, 75 F.2d 245 (1934).

*Affirmed, but remanded for modification of judgment.*

---

7. As will be seen, whether the original transaction was itself usurious is not before us on appeal.

8. Of this, $533.01 was interest and $676.99, principal.

9. $3,644.06 = principal due under extended contract
—1,210.00 = already paid by Pazianos
$2,434.06 = remaining principal due the Schenkers

---

10. The inclusion of the issue in the Schenkers' "Statement of Issues on Appeal" is of no consequence since that statement is not a pleading for joining issues on review. *Rose* *Lees Hardy H. & Sch. Ass'n v. D.C. Bd. of Zon. Adj.*, D.C.App., 343 A.2d 564, 567 (1975).