*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters.  Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 22-CV-0452 & 23-CV-0847

DOUGLASS SLOAN, APPELLANT/CROSS-APPELLEE,

V.

CARLOS ALLEN, APPELLEE/CROSS-APPELLANT.

Appeals from the Superior Court
of the District of Columbia
(2013-CA-005339-R(RP))

(Hon. Juliet J. McKenna, Trial Judge)

(Submitted May 22, 2024                    Decided  September 26, 2024)

*Howard Haley* for appellant.

*Carlos Allen*, pro se.

Before BECKWITH, MCLEESE, and DEAHL, *Associate Judges*.

DEAHL, *Associate Judge*: More than fifteen years ago, Douglass Sloan provided a short-term loan of $60,000 to Carlos Allen to fund Allen's rehabilitation of a property in the District.  The loan's terms were memorialized in a promissory note, which indicated that the loan had a sixty-day term with an initial fixed rate of return of 20%.  In other words, to satisfy the debt, Allen had to pay Sloan $72,000

within sixty days, which the note referred to as "the total indebtedness." If Allen failed to make that payment on time, one of the note's provisions said the "entire indebtedness" would accrue another 2% over the following sixty days, then another 2% over the next sixty days. A different provision said that the $72,000 was "subject to the maximum amount of interest permitted by the Laws of the District of Columbia" if it was not paid back within sixty days.

This appeal stems from Sloan's now-protracted efforts to collect the debt he is owed. The core of the dispute between the parties is whether the loan just described contained an unlawful usurious interest rate—in the District, parties cannot agree to interest rates "exceeding 24% per annum." D.C. Code § 28-3301. In an earlier trial court order from October 2020, which was the subject of a previous appeal, the trial court ruled that Allen had waived his usury defense because he waited nearly seven years in the underlying proceedings before raising it. After rejecting the usury defense as waived, the trial court calculated the total amount due on the loan as $256,946.46, and awarded Sloan that amount plus $97,450 in attorney's fees and costs. Allen appealed, and this court upheld the $97,450 in attorney's fees and costs, but remanded for the trial court to reconsider its determination that Allen had waived his usury defense. *See Allen v. Sloan*, No. 20-CV-0697, Mem. Op. & J. at 1 (D.C. Feb. 28, 2022) (*Sloan I*). We reasoned that the trial court had initially overlooked the principle that a party generally "may raise an

unpled affirmative defense by motion as long as there is no substantial prejudice to the opposing party." *Id.* at 5-6 (citing *RFB Props. II, LLC, v. Deutsche Bank Tr. Co. Ams.,* 247 A.3d 689, 695-96 (D.C. 2021), and *Jaiyeola v. District of Columbia*, 40 A.3d 356, 362 (D.C. 2012)).  So we remanded for the trial court (1) to assess whether Sloan was substantially prejudiced by Allen's dilatoriness in raising his usury defense, an inquiry that the court had not initially undertaken, and (2) to consider the merits of Allen's usury defense if he had not in fact waived it.  *Id.*

On remand, and in the order now on appeal, the trial court ruled (1) that there was no substantial prejudice to Sloan in permitting Allen's assertion of a usury defense, and (2) that the defense was meritorious because, even when interpreted conservatively, this loan included a 34.7% interest rate in its first year.  As we explained in *Sloan I*, when "a contract is tainted with usury, all of the interest charged by the creditor is forfeited." *Sloan I* at 4 (quoting *Pazianos v. Schenker*, 366 A.2d 440, 443 (D.C. 1976)).  But the usurious rate does not "destroy the obligation to repay the principal." *Id.*  (quoting *Nat'l Life Ins. Co. v. Silverman*, 454 F.2d 899, 907 (D.C. Cir. 1971)).  The court therefore ordered Allen to repay the $39,026.46 still outstanding on the principal debt—he had previously made payments of $20,973.54—and entered judgment for Sloan in that amount, plus the $97,450 in attorney's fees and costs that this court had already affirmed in *Sloan I*.

Sloan now appeals, while Allen cross-appeals. Sloan argues that the trial court erred in four respects. First, he argues that the court abused its discretion when it concluded that Allen had not waived his usury defense. Second, he argues that the trial court was wrong to conclude that the loan included a usurious interest rate. Third, he argues that the trial court erred when it ruled that he was not entitled to post-judgment interest on his award. Fourth, he argues that the court erred when it failed to award him additional costs and attorney's fees. We address these arguments in turn, and disagree with Sloan in all respects but one: We agree with him that he is entitled to post-judgment interest on his award, and that it should run from the court's earlier October 2020 judgment. We then address Allen's unmeritorious claims in his cross-appeal.

## I. Whether Allen Waived His Usury Defense

We disagree with Sloan's argument that the trial court abused its discretion in concluding that Allen had not waived his usury defense. As we explained in *Sloan I*, the trial court is free to conclude that an affirmative defense has not been waived when there has been no "unfair surprise or other substantial prejudice to the plaintiff, or interference with the administration of justice." *Jaiyeola*, 40 A.3d at 362; *see also RFB Props. II*, 247 A.3d at 695-96 (trial court has discretion to decide that "a defendant will not be barred from raising [an affirmative] defense in a pre-trial

motion if the 'plaintiff has ample opportunity to respond to the defense.'" (quoting *Douglas v. Kriegsfeld Corp.*, 884 A.2d 1109, 1134 n.56 (D.C. 2005))). While Sloan argues that he has been substantially prejudiced by Allen's delay in raising this defense, that was a judgment call for the trial court in the first instance; Sloan has not highlighted any basis on which we might conclude that the trial court abused its discretion in ruling to the contrary.

This court has already held that even a years-long delay in asserting an affirmative defense might not be so prejudicial to constitute a waiver. *See, e.g.*, *Jaiyeola*, 40 A.3d at 362. And while we acknowledge that the seven-year delay in this case pushes that principle near its limits, we do not detect any attending circumstances that compelled a conclusion that Sloan was substantially prejudiced by Allen's delay in raising his defense. There was not, for example, any witness that became unavailable or unable to recall the underlying events. *See Ward v. United States*, 55 A.3d 840, 845, 847 (D.C. 2012) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)) (witness problems); *see also Dobbs v. Providence Hosp.*, 736 A.2d 216, 221 (D.C. 1999) (delay led to scheduling difficulties). While Sloan likely incurred some unnecessary expenses in pursuing this protracted litigation, it is not clear this litigation would have been substantially truncated had Allen raised his usury defense earlier. And in any event, that prejudice seems largely (if not entirely) mitigated by

the fact that Allen has been ordered to pay the bulk of Sloan's attorney's fees and costs attendant to this litigation.

## II. Whether the Loan Was in Fact Usurious

We also disagree with Sloan's argument that the loan did not actually have a usurious interest rate. On its face, the loan's interest rate was patently usurious. Within the first 180 days alone, the plain terms of the loan dictated that it accrued more than the maximum 24% interest rate that is permitted per year. The $60,000 principal loan ballooned to $74,908.80 after just 180 days, which is a 24.848% interest rate after not even half a year.[1] And then, for the remaining 185 days of the year, the terms of the loan dictated that the balance was "subject to the maximum amount of interest permitted by the Laws of the District of Columbia," i.e., 24% per year, so that the loan would have ballooned to roughly $84,000 by the end of the first year, yielding an annual interest rate of about 40% on the $60,000 principal.[2]

---

[1] To run the math, $72,000 (the total indebtedness after sixty days) x 1.02 = $73,440 (the total indebtedness after 120 days, after applying the 2% rate from days 61-120). Then $73,440 x 1.02 = $74,908.80 (the total indebtedness after 180 days, after applying the 2% rate from days 121-180). And because 74,908.80 / 60,000 = 1.24848, that means the principal accrued 24.848% in interest over that time.

[2] Allen has not advanced an argument that the 20% interest rate over the first sixty days was itself facially usurious, so we do not consider that possibility. One

Sloan counters with a two-step argument that he claims renders the loan non-usurious. He first urges us not to treat the interest rate during the first 180 days as compound, but instead as simple interest on the principal, so that the loan accrued only 24% interest during that initial 180-day term (20 + 2 + 2 on the principal). And after that, he then argues that the "maximum amount of interest permitted by the Laws of the District of Columbia" provided for in the contract—we refer to that language as a "usury savings clause"—had been reached, so that the loan in fact accrued no interest over the final 185 days of the first year.

While the first step of this argument is highly dubious, the second step is untenable. As to the first step, the plain terms of the loan applied the 2% interest rates during days 60 to 180 to the "entire indebtedness"—not just the principal—so that the terms of the loan contemplated compounding interest. While the trial court was willing to assume otherwise, and give the loan's terms their "most conservative interpretation," that assumption seems unfounded.

---

could at least plausibly argue that a 20% rate charged over just sixty days "exceed[s] 24% per annum" by extrapolation. That is, if you take that 20% interest rate over 60 days and extend it over 365 days, it would lead to more than a 120% rate over the course of a year, in arguable violation of D.C. Code § 28-3301. We are not aware of any binding authority about whether our usury statute should be applied to prohibit rates that would be usurious only if extrapolated in that fashion, nor do we opine on that question today.

But even if we indulge the dubious assumption that the interest in this loan was not compounding, Sloan's second step still fails: There is no colorable argument that the loan accrued anything less than 24% per annum over the remaining 185 days of the year, as that was the maximum rate allowable by law.  In fact, that was the very interpretation of the loan's terms that Sloan successfully pressed before the trial court when he initially received a $256,946.46 judgment, so that we might deem Sloan to be judicially estopped from changing his tune now.  *See Mason v. United States*, 956 A.2d 63, 66 (D.C. 2008) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position." (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001))); *Atkins v. 4940 Wisconsin, LLC*, 93 A.3d 1286, 1289 (D.C. 2014) ("Judicial estoppel is an 'equitable doctrine' invoked at a court's discretion." (quoting *Hardy v. United States*, 988 A.2d 950, 964 (D.C. 2010))).  We ultimately do not need to grapple with whether to invoke judicial estoppel here, because Sloan's reading of the note as if the indebtedness did not accrue any interest in the final 185 days of the first year is an atextual and untenable reading of the note's terms in any event.

The note's facially usurious interest rate is not rectified by the usury savings clause.  It would run contrary to our usury statute to permit creditors to avoid its sting via savings clauses purporting to cap the loan's interest rate to the maximum

allowed by law. The animating force of usury statutes is to "relieve[] the borrower of the necessity for expertise and vigilance regarding the legality of rates he must pay," putting that onus "instead on the lender" to set the rate in clear terms that are within the bounds of the law. *Swindell v. Fed. Nat'l Mortg. Ass'n*, 409 S.E.2d 892, 896 (N.C. 1991). "A usury savings clause will not save a usurious transaction when a note is usurious on its face, that is, when the savings clause is directly contrary to the explicit terms of the contract, or when there is no evidence of the lender attempting to effectuate the savings clause." 44B Am. Jur. 2d *Interest and Usury* § 108.

That is why many jurisdictions have ruled that usury savings clauses, like the one Sloan relies upon here, can never operate to rescue an otherwise facially usurious rate. In short, "it is contrary to public policy to enforce a usury savings clause if the interest provided in the loan agreement is otherwise facially usurious at the time of contracting." *Soaring Pine Cap. Real Est. & Debt Fund II, LLC v. Park St. Grp. Realty Servs.*, 999 N.W.2d 8, 26 (Mich. 2023); *see also Swindell,* 409 S.E.2d at 896 (usury savings clauses "cannot shield a lender from liability for charging usurious rates"); *NV One, LLC v. Potomac Realty Cap., LLC*, 84 A.3d 800, 810 (R.I. 2014) ("[U]sury savings clauses are unenforceable as against the well-established public policy of preventing usurious transactions."). Those cases make good sense, but there is an alternative and defensible approach worth considering as well.

There are other jurisdictions that are slightly more lenient on creditors, and will give effect to usury savings clauses where it was not the lender's intention to charge a usurious interest rate. *See, e.g.*, *Jersey Palm-Gross, Inc. v. Paper*, 658 So. 2d 531, 535 (Fla. 1995); *Woodcrest Assoc., Ltd. v. Commonwealth Mortg. Corp.*, 775 S.W.2d 434, 437-38 (Tex. App. 1989); *Arneill Ranch v. Petit*, 64 Cal. App. 3d 277, 294 (1976); *Poulsen's, Inc. v. Wood*, 756 P.2d 1162, 1165 (Mont. 1988). These jurisdictions sometimes allow a savings clause to rescue an otherwise usurious loan when its terms could plausibly be read not to exceed the usury rate because either (1) "the actual interest charged is close to the legal rate," but owing to the complications of calculating interest the rate just slightly ticked over the rate allowable at law, or (2) "the interest due later becomes usurious because of an event outside of the control of the parties." *Soaring Pine*, 999 N.W.2d at 29 & n.37 (citing *Jersey Palm-Gross*, 658 So.2d at 535). This group of courts has reasoned that there is no injustice in giving effect to a usury savings clause in those limited circumstances.

This court has never resolved which (if either) of these two competing approaches to follow,[3] and we need not resolve that question today. It is enough for

---

[3] We have entertained for the sake of argument the proposition that where "the imposition of the usurious rate was . . . a result of mistake or accident," that might

us to say that it would contravene the District's public policy, undergirding its usury statute, to give effect to a usury savings clause where the lender's intention *was* to charge the usurious rate apparent from the face of the loan's terms, as was the case here. We have proof positive that Sloan intended to charge a usurious rate, because that is precisely the rate at which he sought to collect on his loan, and it is the rate that he argued he was entitled to throughout several years of court proceedings, right up until it became advantageous for him to assert otherwise because Allen was permitted to raise a usury defense. The terms of this loan were both facially and intentionally usurious, so that under either of the approaches above this savings clause is inoperative. Whether there is some set of circumstances where we might give effect to such a clause is a question we save for another day. This is not such a

---

operate as a defense to "the penalties of usury." *Pazianos*, 366 A.2d at 443 (citing *Lloyd v. Scott*, 29 U.S. 205, 224 (1830)). But that was merely dicta, and in any event this case does not involve any mistake or accident so whatever safe haven we might afford lenders for reasonable mistakes or accidents would not apply here. On somewhat related topics, this court's precedents instruct (1) that a borrower's own "voluntary repayment of the loan before maturity" cannot render an otherwise non-usurious loan usurious, *Atl. Life Ins. Co. v. Wolf*, 54 A.2d 641, 643 (D.C. 1947), and (2) that a "usurer cannot conceal his handiwork by avoiding use of the term 'interest,'" *Fuller v. Universal Acceptance Corp.*, 264 A.2d 506, 508 (D.C. 1970). Those principles are inapposite here, where the usurious rate was not the result of any prepayment, and it was not disguised as anything other than interest by the loan's terms.

case, so Sloan has "forfeit[ed] the whole of the interest so contracted to be received."
D.C. Code § 28-3303.

### III.    Whether and When Post-Judgment Interest Accrues on Sloan's Award

We vacate the trial court's judgment in one narrow respect because we agree with Sloan that he was entitled to post-judgment interest on his award, dating back to the trial court's initial October 2020 award.  The trial court, after our prior remand, declined to award Sloan post-judgment interest—except on the attorney's fees award—because, in its view, Sloan had forfeited his right to receive any interest on the contract because he charged a usurious interest rate on the loan.  *See* D.C. Code § 28-3303.  We disagree with that approach.  The usury statute precludes a lender from collecting "the interest so contracted to be received" on a usurious loan.  *Id.*  But post-judgment interest is not contracted-for interest; it is instead interest on a judgment mandated by law.  *See* D.C. Code § 15-109.

Section 15-109 of the D.C. Code provides that a trial court's award from an underlying claim sounding in tort or contract "shall bear interest."  *Id.*; *see also Riggs Nat'l Bank v. Carl G. Rosinski Co.*, 596 A.2d 997, 1000-01 (D.C. 1991) ("postjudgment interest" under § 109 is "mandatory").  That post-judgment interest runs "on the amount for which it is rendered from the date of the judgment."  D.C. Code § 15-109.  The usury statute precluded Sloan from collecting any interest on

the underlying contract, but it does not—by its terms or its underlying policy—abrogate Sloan's entitlement to post-judgment interest. And because Sloan first received his award reflecting the outstanding principal of the loan in October 2020, and that award remains undisturbed, the post-judgment interest on that award must accrue as of the date of that October 2020 order. We therefore remand for the trial court to amend its order so that post-judgment interest accrues from the date of that order.

### IV.    Whether Sloan Is Entitled to Additional Attorney's Fees and Costs

We reject Sloan's skeletal argument that the trial court abused its discretion when it declined to award him additional attorney's fees and costs. He asserts that he "incurred in excess of $183,000 in attorney fees and costs," but beyond that bare assertion he does not put any meat on the bones of how specifically the trial court erred. This court has already affirmed this attorney's fee award in *Sloan I*, so to the extent Sloan is attacking that award, his challenge is barred by the law of the case and the mandate rule. *In re Robinson*, 303 A.3d 627, 634 (D.C. 2023) ("[T]he 'mandate rule,' which is 'related to'" the law of the case doctrine, "provides that a trial court is not free to reconsider issues that have already been resolved by the appellate court in the same case." (quoting *Streater v. United States*, 478 A.2d 1055, 1057 n.3 (D.C. 1984))). If he is instead seeking only those attorney's fees and costs

related to the post-remand litigation, he has not sufficiently articulated such a claim, so he has forfeited it. *Wagner v. Georgetown Univ. Med. Ctr.*, 768 A.2d 546, 554 n.9 (D.C. 2001) (citing *United States v. Zannino*, 895 F.2d 1, 16 (1st Cir. 1990)).

## V.   Allen's Cross-Appeal

Allen makes a variety of arguments in his cross-appeal, all of which attack the wholesale validity of the loan contract and his obligation to pay attorney's fees. We already resolved those issues in *Sloan I*, when we explained that any usurious rate in the contract was not grounds on which to vitiate the contract wholesale, and we also upheld the award of attorney's fees and costs. So as with Sloan's preceding argument, Allen's arguments are barred by the law of the case and the mandate rule. *In re Robinson*, 303 A.3d at 634.

*                    *                    *

For the foregoing reasons, we affirm the trial court's order in part, vacate it in part, and remand for the imposition of post-judgment interest on the $39,026.46 award reflecting the outstanding principal of the loan that was awarded to Sloan.

*So ordered.*